**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | **Criminal Case No. 1:20-cr-234 (TSC)** |
| : | |
| **KHIREE WILLIAMS,** : | |
| : | |
| **Defendant.** : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to order the pretrial detention of defendant Khiree Williams, and in support thereof, submits this memorandum providing an overview of the investigation which led to the October 22, 2020 indictment of the defendant. In support thereof, we submit as follows:

### I. PROCEDURAL BACKGROUND

On Thursday, October 22, 2020, an Indictment was filed in the United States District Court for the District of Columbia charging defendant Khiree Williams (hereinafter "the defendant" or "Williams") with three counts of Distribution of 100 grams or more of Phencyclidine ("PCP"), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iv), and one count of Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of Title 18, United States Code, Section 924(c). An arrest warrant was issued for the defendant.

The arrest warrant was executed on Tuesday, October 27, 2020. On Wednesday, October 28, 2020, the defendant is scheduled to appeared before Magistrate Judge Harvey for his initial hearing. The government is moving to have Williams held without bond pursuant to Title 18, United States Code, Sections 3142(f)(1)(A) and 3142(f)(1)(C). In addition, the government notes that the defendant is subject to the rebuttal presumption of detention under Title 18, United States Code, Sections 3142(e)(3)(A) and 3142(e)(3)(B).

## II.   LEGAL AUTHORITY

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the Government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F.Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210, see also Williams, 798 F. Supp. at 36.

Since the defendant has been indicted for "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[,]" the Court must presume, subject to rebuttal, that there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required and the safety of the community. 18

U.S.C. § 3142(e)(3)(A). The indictment, standing alone, constitutes probable cause that the person charged committed the offense and is "enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." Smith, supra, 79 F.3d at 1210; accord United States v. Williams, 811 F. Supp.2d 274, 276 n.2 and 277 (D.D.C. 2011) (citing Smith and United States v. Carter, 802 F. Supp.2d 180, 182 (D.D.C. 2011)). Relying on the legislative history of this provision, the District of Columbia Circuit Court has observed that the rebuttable presumption covering serious drug trafficking offenses was included because of the "significant risk of pretrial recidivism" among persons charged with major drug felonies. United States v. Alatishe, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (citing S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203)). When the rebuttable presumption of Title 18, United States Code, Section 3142(e) is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." Id. at 371.

The Bail Reform Act Section 3142(e), which authorizes detention without bail pending trial, provides:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required ***and the safety of any other person and the community***, such judicial officer ***shall order*** the detention of the person before trial.

18 U.S.C. § 3142(e) (emphasis added). Factors that the Court must consider when determining whether there are release conditions that will reasonably assure a defendant's

3

appearance as required and the safety of any person and the community are: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.   18 U.S.C. § 3142(g).   A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ."   18 U.S.C. § 3142(e).   A judicial determination that a defendant should be detained pending trial on grounds of community safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); see also United States v. Simpkins, 826 F.2d 94, 96 (D.C. Cir. 1987); Alatishe, supra, 768 F.2d at 370.   As the legislative history of the statute reflects, the risk that a defendant will continue to engage in drug dealing if released, in itself, constitutes a danger to the community:

> The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . . The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."

S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, at 3195-3196.

In this case, because probable cause has been established that the defendant distributed more than 100 grams of PCP on three occasions and for each offense the maximum term of

imprisonment is at least ten years pursuant to the Controlled Substances Act, see 21 U.S.C. § 841(a)(1), the statutory presumption favoring detention applies and operates to compel the defendant's pre-trial detention, unless and until the defendant presents evidence to rebut it. Even when a defendant presents evidence to attempt rebuttal of the presumption, the presumption "remains a factor for consideration by the district court in determining whether to release or detain." The defendant cannot overcome this presumption.

Additionally, since Williams has been indicted for a violation of Title 18, United States Code, Section 924(c), the Court must presume, subject to rebuttal, that there is no condition or combination of conditions that will reasonably assure his appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(B). This Court has found that an indictment for using, carrying, and possessing a firearm in violation of 924(c) raised the presumption in favor of pre-trial detention. United States v. Hubbard, 962 F.Supp.2d 212, 214 (D.C. 2013). The Hubbard Court went on to state that "[o]rdinarily, the government bears the burden of demonstrating the appropriateness of pretrial detention. However, where the judicial officer finds that there is probable cause to believe that the person committed an offense under section 924(c), it is presumed that no condition or combination of conditions would be sufficient to reasonably assure the defendant's appearance and the community's safety." Id. at 214-215. Further, the "indictment returned by a duly constituted grand jury conclusively establishes the existence of probable cause for the purpose of triggering the rebuttable presumption." Id. Williams cannot overcome this presumption.

## III.   FACTUAL BACKGROUND

Between September 25, 2019 and December 20, 2019, Williams sold PCP to an undercover officer (hereinafter "U/C") on nine separate occasions.   During the last deal, Williams also sold the U/C a pistol and ammunition.   Although the government only sought indictment on the last three deals, all of the deals are described herein.   The undercover deals are summarized as follows:

|   | DATE | QUANTITY OF PCP | PRICE |
|---|------|-----------------|-------|
| 1 | 9/26/19 | 2 cigarettes dipped in PCP | $30 |
| 2 | 10/19/19 | 2 cigarettes dipped in PCP | $40 |
| 3 | 10/21/19 | ½ ounce | $125 |
| 4 | 10/25/19 | ½ ounce | $125 |
| 5 | 10/29/19 | 1 ounce | $260 |
| 6 | 11/5/19 | 3 ounces | $800 |
| 7 | 11/11/19 | 6 ounces | $1,350 |
| 8 | 11/26/19 | 8 ounces | $1,900 |
| 9 | 12/20/19 | 16 ounces<br>9mm pistol | $3,500 (PCP)<br><br>$600 (pistol) |

The transactions are further detailed below.

On September 26, 2019, the U/C went to the 200 block of Q St in Northwest Washington D.C. and met with Williams. The U/C engaged in a conversation with Williams about purchasing two cigarettes dipped in PCP, commonly called "dippers."   Williams agreed to sell the U/C two

6

dippers in exchange for $ 30. The undercover then handed Williams $30 of Government funds and left with two dippers. This transaction was not recorded.

On October 19, 2019, the U/C went to the 200 block of Q St in Northwest, D.C. and met with Williams. The U/C engaged in a conversation with Williams about purchasing two dippers. Williams sold the U/C two dippers in exchange for $40. This transaction was not recorded. Williams provided the U/C with a phone number to arrange future transactions. Williams gave his cellular telephone number to the undercover as follows: 202-664-xxxx ("Williams's Number"). It was subsequently determined, via Sprint subscriber records, that the number is subscribed to Khiree Williams and the associated address was 200 P Street, N.W., #21 Washington, DC.[1]

On October 21, 2019, the U/C contacted Williams via text message to Williams's Number. The U/C made arrangements to purchase a half ounce vial of PCP for $125. On the same day, the U/C met Williams in Northwest Washington D.C. and exchanged $125 of Government funds for a half ounce vial of PCP.   This transaction was not recorded.

On October 25, 2019, the U/C contacted Williams via text message to Williams's Number. The U/C made arrangements to purchase a half ounce vial of PCP for $125. On the same day, the U/C met the target in Northwest Washington D.C. and exchanged $125 of Government funds for a half ounce vial of PCP. This transaction was not recorded.

On October 29, 2019, the U/C contacted Williams via text message to Williams's Number. The U/C made arrangements to purchase a one-ounce vial of PCP for $260. On the same date, the

---

[1] In addition to be identified via phone records, the U/C positively identified the person who sold him/her PCP on nine occasions as Khiree Williams.

U/C met Williams in Northwest Washington D.C. and exchanged $260 of Government funds for the ounce of PCP. This transaction was not recorded.

On November 1, 2019, the U/C went to the 200 block of Q St, NW and had a conversation with Williams about future purchases of PCP.

On November 5, 2019, the U/C contacted Williams via text message to Williams's Number and made arrangements to purchase three ounces of PCP for $800. On the same date, the U/C met Williams in Northwest Washington, D.C. and exchanged $800 of Government funds for three ounces of PCP. This transaction was not recorded.

On November 11, 2019, the U/C contacted Williams via text message to Williams's Number. The U/C made arrangements to purchase six ounces of PCP for $1,350. Williams texted the U/C and asked if the U/C could drive him to the "oil store" to get some more vials to hold PCP because Williams didn't have any more. The U/C agreed picked-up Williams in the U/C vehicle and they drove to a BP gas station at the 300 block of Rhode Island, NW. The U/C and Williams entered the store and attempted to buy a six ounce bottle of juice, but the cashier said that she did not have that size. The U/C and Williams then went back to the U/C's vehicle and drove to the 600 block of Florida Avenue, NW and went inside a shop that sold oils. Once in the store, the shopkeeper informed them that he did not sell one ounce bottles individually. The U/C and Williams next drove to the CVS in the 1900 block of 7th Street, NW, where the U/C purchased a 6 ounce bottle of CVS brand "cough and congestion" liquid medication. The U/C and Williams then walked back to the U/C's car and drove back to the original meeting place in front of 1519 4th Street, NW. Williams got out of the car and walked down 4th Street. Williams then returned to

the U/C's vehicle holding the same bottle that the U/C bought at CVS, which now contained the PCP. The U/C exchanged $1,350 of Government funds for six ounces of PCP. The substance in the bottle subsequently field tested positive for PCP. The video recording of this transaction includes a clear picture of Williams's face, as well as Williams handing the medicine bottle of PCP to the U/C:




On November 26, 2019, the U/C contacted Williams via text message to Williams's Number. The U/C made arrangements to purchase eight ounces of PCP for $1,900. The U/C drove to 1519 4th Street, NW, and upon arrival, Williams walked over to the U/C's car. Williams got into the passenger seat of the U/C's car and asked for an empty glass container – the U/C provided an empty 8 ounce juice bottle. Williams told the U/C that he was going to walk around the corner and "put it together" for the U/C. The U/C then watched as Williams walked eastbound on P St NW with the empty container and then disappeared from view. After a few minutes, Williams returned

9

to the U/C's vehicle and showed him the same bottle filled with a liquid solution that looked like PCP. The U/C gave Williams $1,900 in exchange for the glass bottle with PCP. The substance in the bottle subsequently field-tested positive for PCP. The entire exchange in the vehicle was videotaped. The U/C and Williams talked about future purchases of PCP. Williams told the U/C that he would get 16 ounces for him. The U/C asked Williams if Williams could get him a gun for protection. Williams stated that he didn't have a gun, but that he could look into it for the U/C.

On December 20, 2019, the U/C met Williams and purchased 16 ounces of PCP for $3,500 and, simultaneously, a pistol for an additional $600. The entire exchange in the vehicle was videotaped.





## IV.  DEFENDANT'S CRIMINAL HISTORY

The third factor, the history and characteristics of the person, similarly weighs in favor of detention. Although the defendant has no prior felony convictions, on April 12, 2020, the defendant was arrested and charged in Superior Court with Unlawful Possession With Intent To Distribute a Controlled Substance, in violation of 48 D.C. Code, Section 904.01(a)(1) (D.C. Superior Court case no. 2020 CF2 4050). During that offense, officers observed Williams in possession of a small bottle containing a substance suspected of being liquid PCP. Officers observed a second individual dip his cigarette into the small bottle filled with suspected PCP held by Williams; when the second individual was stopped, he advised law enforcement that the cigarette was dipped in PCP and he got it from Williams. *See* Exh. 1 (Gerstein Affidavit, April 12, 2020 Arrest). Officers then located a clear glass vial half-filled with an amber liquid in the grass near where the suspected transaction had occurred. In a search incident to arrest, officers recovered from Williams' person white plastic wrap containing a white rock-like substance (suspected cocaine base), a gray scale, and $75 in U.S. currency. A forensic chemist analyzed the substances and PCP was detected, as well as cocaine base. A status hearing in that case is currently set for March 1, 2021.




11

Moreover, at the time of Williams's arrest on the instant arrest warrant on October 27, 2020, he was found to be in possession of approximately two grams of a substance that field-tested positive for fentanyl.

The government will supplement with additional information based on any additional information contained in the Pretrial Services Report.

## V. CONCLUSION

The government reserves the right, and will make, further arguments at the detention hearing. The government respectfully requests this Court to find, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community. This Court should order that the defendant, Khiree Williams, be held without bond during the pendency of this case to protect the safety of others and the community from the defendant.

**WHEREFORE**, we respectfully request that the Court issue an Order granting the government's motion that defendant Khiree Williams be held without bond.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY
N.Y. Bar No. 4444188

By:     /s/
Dineen A. Baker, D.C. Bar No. 487820
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., 4th Floor
Washington, D.C. 20530

# Exhibit 1

Case 1:20-cr-00234-TSC   Document 4   Filed 10/29/20   Page 14 of 14

# SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION
## UNITED STATES
## VS
## WILLIAMS, KHIREE REGINALD
### CCN #: 20058138
### Arrest Number: 032009073

The event occurred on **04/12/2020** at approximately **14:59** at **123 Q STREET NW, WASHINGTON, DC 20001**

---

BWC Activated.

Bike Tact Officers' Romero, Brown and Cress were working the evening tour of duty in full uniform and utilizing marked police scout car 965. While patrolling the 100 block of Q Street NW, Officers' Romero Brown and Cress observed Defendant Hudgens dipping his cigarette in a small bottle filled with amber liquid that Defendant Williams was holding. Based on Police Officers experience, we immediately conducted a stop of both Defendants on suspicion of distribution of PCP. The amber liquid inside the vial was later determined as liquid PCP.

Officer Cress stopped Defendant Williams who stated that the cigarette was dipped in PCP and that he got it from Defendant Williams. Officer Cress recovered two cigarettes which appeared wet from the dipping onto a PCP vial. The cigarettes had a strong smell of PCP.

Officer Brown and Romero stopped Defendant Williams in front of 123 Q Street NW. Officer Romero canvassed the grass area where the Defendants were observed and found a clear glass medium sized vial half filled with an amber liquid. The liquid had a strong smell of PCP and had small amounts of tobacco leaves inside. Defendant Williams stated to Officer Brown that the vial is not his.

Defendant Williams was placed under arrest for Distribution of a Controlled Substance – Liquid PCP, Possession with intent to distribute a Controlled Substance – Liquid PCP and Possession of a Controlled Substance Felony – Liquid PCP. A search incident to arrest revealed that Defendant Williams had in his possession a white plastic wrap with white hard rock inside, a gray scale, 75.00 in US Currency and a white iPhone with a cracked screen in a black case. Officer Dawes conducted a field test of the white hard rock substance and he confirmed that it had a positive color reaction for containing cocaine. Defendant Williams was additionally charged with Possession of a Controlled Substance Misd- Crack cocaine.

Defendant Hudgens was placed under arrest for Possession of a Controlled Substance Misd. – PCP Dipped Cigarettes

Officer Motley transported both Defendants in the transport wagon to the Third District Station for processing.

COC of Vial with Liquid PCP: Defendant Williams – Grass area on the side walk in front of 123 Q Street NW – Romero – Drug Book 2621/24.

COC of Crack Cocaine – Defendant Williams front right pant coin pocket – Cress – Dawes – Drug Book 2621/24.

COC of 2 cigarettes dipped in Liquid PCP – Defendant Hudgens – Cress – Drug book 2621/24.

A gray portable scale, 75.00 in US Currency and an IPhone with cracked screen with black case was recovered from Defendant Williams and was placed on Evidence Book: 2702/46. The aforementioned items are needed for the case.

See attachments.

---

The event and acts described above occurred primarily in the District of Columbia and were committed as described by defendant(s) listed in the case caption.